# SAN JUAN LIGHT & TRANSIT CO. *v.* REQUENA.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES
FOR PORTO RICO.

No. 96.   Argued December 13, 1911.—Decided March 18, 1912.

Denial by the trial court of a motion to strike from the complaint allegations as to exemplary damages does not harm defendant if the court instructs the jury that only compensatory, and not exemplary, damages can be recovered.

Where the parties, with the assent of the court, unite in trying a case on the theory that a particular matter is within the issues, that theory cannot be rejected when the case is in the appellate court for review.

The doctrine of *res ipsa loquitur* is that when a thing which causes injury, without fault of the person injured, is shown to be under the exclusive control of defendant, and would not cause the damage in ordinary course if the party in control used proper care, it affords reasonable evidence, in absence of an explanation, that the injury arose from defendant's want of care.

The doctrine of *res ipsa loquitur* was rightly applied against defendant electric light company in the case of a person injured while adjusting an electric light in his residence by an electric shock transmitted

from the outside wires of the defendant company entirely without
fault on his part and in manner which could not have happened had
such outside wires been in proper condition.

Although an instruction may be subject to criticism standing alone,
it may be unobjectionable if read in the light of what preceded and
what followed it.

4 Porto Rico Fed. Rep. 356, affirmed.

THE facts are stated in the opinion.

*Mr. Hugo Kohlmann,* with whom *Mr. F. Kingsbury
Curtis, Mr. H. H. Scoville* and *Mr. H. P. Leake* were on
the brief, for plaintiff in error:

The doctrine of *res ipsa loquitur* was not applicable,
and the court below erred in applying it to this case.

This doctrine applies only where all the agencies which
might have been instrumental in bringing about the in-
jury are under the exclusive control and management of
the defendant. There can be no presumption of negligence
on the part of the defendant where plaintiff's evidence
tends to show contributory negligence on his part as it
did in the case at bar; or that the accident would not
have happened had the defective installation owned by
the defendant or the owner of the house been in good
condition, or facts from which it could be inferred that
a third agency was the proximate cause of the accident,
or that it was a case of divided responsibility where an
unexplained accident may have been attributable to one
of several causes, for some of which the defendant is not
responsible. *Peters* v. *Lynchburg Light Co.,* 108 Virginia,
333; *Minneapolis Electric Co.* v. *Cronon,* 166 Fed. Rep.
651; *Memphis National Fire Ins. Co.* v. *Denver Electric
Co.,* 16 Colo. App. 86; *Gas Co.* v. *Speers,* 113 Tennessee, 83;
*Harter* v. *Colfax Light Co.,* 124 Iowa, 500.

Moreover, the doctrine of *res ipsa loquitur* does not
apply at all where complainant relies on specific acts of
negligence. In such case, plaintiff must prove the negli-

gence alleged.   *McGrath* v. *St. Louis Transit Co.,* 197 Missouri, 97.

The complaint specifically charged negligence in connection with the wire inside the electric light globe which the deceased was alleged to have touched, and plaintiff, in order to recover, was obliged to prove the specific negligence alleged.   The fact of the death of the deceased was no evidence at all of its having occurred by reason of negligence on defendant's part as set forth in the complaint. The testimony tended to show that defendant could not have been guilty of the negligence alleged, as it did not have any control over the wires to which the allegations of the complaint referred.

The doctrine of *res ipsa loquitur,* even if applicable, was incorrectly applied by the court below.

The correct application of the doctrine of *res ipsa loquitur* requires that the evidence of the happening of the accident, even without other proof of negligence, should be allowed to go to the jury as evidence from which negligence may be inferred by the jury.   It creates no presumption of negligence, and does not shift the burden of proof. *Lyles* v. *Carbonating Co.,* 140 Nor. Car. 25, 26; *Ross* v. *Cotton Mills,* 140 Nor. Car. 115, 119, 120; *Cherall* v. *Palmer Brick Co.,* 117 Georgia, 106, 108; *Buckland* v. *New York, N. H. & H. R. Co.,* 181 Massachusetts, 3; *De Glopper* v. *Nashville Light Co.,* 134 S. W. Rep. 609; *East End Oil Co.* v. *Pennsylvania Torpedo Co.,* 190 Pa. St. 350, 353; *Dean* v. *Tarrytown &c. R. R. Co.,* 113 App. Div. 437.

An instruction telling the jury substantially that if they believed certain facts, then the law raises the presumption of negligence, is misleading, unless it also tells the jury that such presumption is rebuttable.   *Chicago &c. Co.* v. *Crose,* 113 Ill. App. 547; *Chicago &c. Co.* v. *Jamieson,* 112 Ill. App. 69.

The rule, *res ipsa loquitur,* cannot be applied where the evidence shows the conditions under which the accident

happened, and the question is raised whether, under the circumstances specified, the conduct of the defendant was negligent. *Dentz* v. *Penn. R. R. Co.*, 75 N. J. L. 893.

Plaintiff's cause of action being based upon alleged negligence of defendant in respect to the interior wiring of deceased's house, there could be no recovery in this action if such wiring was not under the defendant's control.

If the injury was caused by matters other than the defects in such wires the plaintiff was not entitled to recover, for the reason that the negligence upon which the complaint is based is in reference to such inside wiring, and clearly recovery could not be based upon negligent acts or omissions other than those alleged in the complaint. *McGrath* v. *St. Louis Transit Co.*, 197 Missouri, 97; *Batterson* v. *Chicago & G. T. Ry.*, 49 Michigan, 184; *T. W. & W. Ry. Co.* v. *Foss,* 88 Illinois, 551; *Atlantic Coast Line* v. *Capple*, 110 Virginia, 514; *Long* v. *Doxey*, 50 Indiana, 385; *Murphy* v. *North Jersey St. R. Co.*, 71 N. J. L. 5.

On the other hand, if the defects in the house installation did cause the death of plaintiff's husband, plaintiff is not entitled to recovery unless defendant was shown to control and to be responsible for the condition of such installation. *Murphy* v. *North Jersey St. Ry. Co.*, 71 N. J. L. 5, 7.

The burden of showing that negligence, or other wrong, was the proximate cause of the injury is upon the plaintiff. The plaintiff must not only prove negligence, but he must also prove that such negligence was the proximate cause of the injury. *Kelsey* v. *Jewett*, 28 Hun, 51; *Larson* v. *St. Paul &c. Ry. Co.*, 43 Minnesota, 488.

Proximate cause was a question for the jury. *Milwaukee & St. P. Ry. Co.* v. *Kellogg*, 94 U. S. 469; *St. Louis, I. M. & S. Ry. Co.* v. *Needham*, 69 Fed. Rep. 823; 1 Thomp. on Negligence, § 161 and cases; *Pittsburg Ry. Co.* v. *Carlson*, 24 Ind. App. 559; *Ætna Fire Ins. Co.* v. *Boon*, 95

U. S. 130; and see a decision of the Supreme Court of Spain, March 7, 1902, Vol. 93, Jurisprudencia Civil, referred to in *Roman* v. *American Ry. Co.*, 10 Porto Rico 52. See also *Little* v. *Hackett*, 116 U. S. 366, 371.

The court erred in refusing to charge that if the cause of deceased's death was an inevitable accident, plaintiff could not recover herein. *Clyde* v. *Richmond R. Co.*, 59 Fed. Rep. 394; *Hodgson* v. *Dexter*, 12 Fed. Rep. 283; *Dryer* v. *People*, 188 Illinois, 40; *Dyget* v. *Bradley* (N. Y.), 8 Wend. 469.

The defendant exercised the degree of care in the inspection of its wires which the law requires to be exercised. It could not anticipate the fire in the bakery, nor did it know the plaintiff's installation was defective. *Texas Pac. Ry. Co.* v. *Patton*, 61 Fed. Rep. 259; *Atlantic Coast Line* v. *Capple*, 110 Virginia, 514.

The court erred in refusing charge that if defendant had made a proper inspection a short time before the accident, and the inspection disclosed no defect, plaintiff could not recover. *Smith* v. *East End Elec. Co.*, 198 Pa. St. 19; *Denver Com. El. Co.* v. *Simpson*, 31 L. R. A. 566; *Cosgrove* v. *Kennebec Light & Heat Company*, 98 Maine, 473.

Defendant's motion to strike from the complaint all allegations as to exemplary damages should have been granted. *Milwaukee &c. R. Co.* v. *Arms*, 91 U. S. 489; *W. U. Tel. Co.* v. *Eyser*, 91 U. S. 495; *Re California Nav. & Imp. Co.*, 110 Fed. Rep. 670; *Thomson* v. *Chicago, M. & S. Paul R. R. Co.*, 104 Fed. Rep. 845; *Bube* v. *B. R. L. & P. Co.*, 140 Alabama, 276.

In Porto Rico there is no statute authorizing the recovery either by parent, widow, or any other person, of exemplary damages in a case of negligence.

The court declined to hear further argument. *Mr. Willis Sweet* and *Mr. George H. Lamar* submitted a brief for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

The judgment here to be reviewed is one awarding damages to a widow for the death of her husband, caused by an electric shock received while he was adjusting an incandescent light in his residence in San Juan, Porto Rico. The case presented by the evidence produced upon the trial, which was to the court and a jury, was this:

The defendant was supplying the inhabitants of San Juan with electricity for lighting purposes, and had engaged to deliver at the deceased's residence a current suitable for lighting it. The electricity was conveyed along the street in front of his residence by a primary wire carrying a current of 2,200 volts, and by means of parallel or multiple converters the current was reduced to 110 volts and then carried to his residence and those of his neighbors by a secondary wire. These wires and converters were owned and controlled by the defendant, and the wiring and fixtures in the residence of the deceased were owned and controlled by him. On the occasion in question the current carried by the secondary wire, and by it communicated to the wiring in the residence of the deceased, became in some way greatly and dangerously increased in voltage, and it was because of this that he received the fatal shock. Had this current been maintained at substantially its normal standard, as was contemplated, it would not, in the circumstances, have done him any injury. He was not responsible for the increased voltage, and neither did he have reason to expect it.

There were no outside electric wires in that vicinity save those of the defendant, and the increased and dangerous current could only have come from its primary wire. About the time of the shock to the deceased two of his neighbors had trouble with a like current in their houses. One received a shock which felled him to the

floor and rendered him unconscious, and the other found the wires in his shop flashing, and on coming in contact with one of them was made unconscious and burned so that he was taken to a hospital for treatment. Shortly thereafter it was found that the ground or protecting wire leading from one of the converters to the earth was broken or severed and that the other converter was heated and out of order, the insulation being charred.

There was testimony tending to show that on the day preceding these shocks the primary and secondary wires and the converters had been examined by the defendant's inspector and found in good condition, but this testimony was greatly impaired upon the cross-examination of the inspector, who then said: "My inspection consisted in seeing that the poles and overhead trolley lines were in good condition. I just walked along and examined each pole, but did not climb them. When I came to the transformer [converter] I did not climb the pole and didn't look at the fuses. . . . No, sir; on that day I didn't look at the transformer any closer than I could see it from the ground. . . . There is no way you can tell from looking at the outside of the transformer whether it is in good condition or not."

There was also testimony tending to show that the wiring in the deceased's residence was not properly insulated or in good condition, but there was no claim that the defendant was responsible for this, and neither was there any evidence that the fatal shock resulted therefrom.

Much of the testimony was addressed to the questions, whether a current of unusual and dangerous voltage was communicated from the defendant's wires to the wiring in the residence of the deceased, and, if so, whether this resulted from negligence of the defendant in failing to exercise appropriate care in the maintenance and inspection of its wires and converters. This testimony was

admitted without objection, both parties tacitly treating it as within the issues.

That the fatal shock resulted, without fault of the deceased, from an unusual and dangerous current carried to his residence by the wires of the defendant was so conclusively established by the evidence that that part of the case might well have been covered by a peremptory direction to the jury; leaving them to determine, under appropriate instructions, the question of the defendant's negligence and the amount, if any, which the plaintiff was entitled to recover.

With this statement of the case presented upon the trial, we come to the rulings which are assigned as error.

1. A motion to strike from the complaint a paragraph relating in part to exemplary damages was denied, because not all of the paragraph was deemed objectionable, and complaint is made of that ruling. But it is not necessary to consider its propriety. Even if wrong, it did the defendant no harm, because the court instructed the jury that there could be no recovery of exemplary damages, but only such as were compensatory.

2. It is urged that the negligence charged in the complaint related only to the condition of the wiring inside the residence of the deceased, and therefore that the court erred in permitting a recovery on the theory that the defendant was negligent in respect of the maintenance and care of the wires and converters outside. This contention must fail. While the complaint was not drafted with commendable precision, and, if critically examined, might be regarded as leaving it uncertain whether the negligence charged related to the wiring inside or to that outside whereby the current was supplied, there was no objection to this uncertainty in the court below. On the contrary, the trial proceeded, as we have seen, upon the theory that the question whether the defendant had failed to exercise appropriate care in the maintenance and inspec-

tion of its outside wires and converters was within the issues. Each party, without objection from the other, introduced evidence bearing upon that question; and when it was submitted to the jury there was no exception upon the ground of a variance. Effect must therefore be given to the well-settled rule that where the parties, with the assent of the court, unite in trying a case on the theory that a particular matter is within the issues, that theory cannot be rejected when the case comes before an appellate court for review.

3. In its charge to the jury the court explained, in substance, that a company supplying electricity for lighting purposes and engaging with individuals to deliver a suitable current at their residences and places of business over its own system of wires and appliances is bound to exercise such control over the subtle and perilous agency with which it is dealing and to take such precautions in the maintenance and inspection of its wires and appliances as are reasonably essential to prevent an excessive and dangerous current from passing from its supply wires to the service wires of its patrons, and then said:

"And you are further instructed that if you believe from a preponderance of the evidence that the deceased came to his death while innocently and without knowledge of any danger using an incandescent light, the current for which was furnished, or to which the electricity was supplied, by the defendant company, the presumption is that the electric company was negligent, and it devolves upon it to show that the surplus and dangerous current that came over the wires did not occur from any negligent act on its part."

Exception to this instruction was taken upon the ground that it erroneously applied the doctrine of *res ipsa loquitur*. While recognizing that that doctrine is of restricted scope, and when misapplied is calculated to operate prejudicially, we think there was no error in its application in this in-

stance.  The deceased was without fault.  The defendant's primary wire was carrying a current of high and deadly voltage.  Its secondary wire conveyed to his residence an excessive and dangerous current which could only have come from its primary wire.  Had its wires and converters been in proper condition, the excessive and dangerous current would not have been communicated to its secondary wire and the injury would not have occurred.  These wires and converters were exclusively under its control, and it was charged with the continuing duty of taking reasonable precautions, proportioned to the danger to be apprehended, to maintain them in proper condition.  In the ordinary or usual course of things, the injury would not have occurred had that duty been performed.  Not only did the injury occur, but immediately thereafter both converters were found to be out of order; one being heated and its insulation charred, and the protecting ground wire of the other being broken or severed.  Besides, the defendant engaged to supply a current of low voltage, reasonably safe and suitable for lighting, while the current delivered on this occasion was of high voltage, extremely dangerous and unsuitable for lighting purposes.  These circumstances pointed so persuasively to negligence on its part that it was not too much to call upon it for an explanation.  Of course, if the cause of the injury was one which it could not have foreseen and guarded against, it was not culpable, but in the absence of that or some other explanation there was enough to justify the jury in finding it culpable.  This was all that was meant by the instruction, reasonably interpreted.  It was not a model, and, if it stood alone, might be subject to criticism.  But, if read in the light of what preceded and followed it and of the case before the jury, it was unobjectionable.  When so read it rightly declared and applied the doctrine of *res ipsa loquitur*, which is, when a thing which causes injury, without fault of the injured person, is shown to be under

the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care. *Inland and Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551, 554; *East End Oil Co.* v. *Pennsylvania Torpedo Co.*, 190 Pa. St. 350; *Alexander* v. *Nanticoke Light Co.*, 209 Pa. St. 571; *Trenton Passenger Railway Co.* v. *Cooper*, 60 N. J. L. 219; *Newark Electric Co.* v. *Ruddy*, 62 N. J. L. 505; 2 Cooley on Torts, 3d ed., 1424; 4 Wigmore on Evidence, § 2509.

4. Complaint is made of the court's refusal to give several instructions requested by the defendant. All have been examined, and we find no error in their refusal. Some were in substance incorporated in the charge, some were inapplicable to the case before the jury, and others did not correctly state the law.

*Judgment affirmed.*