## McDONALD et al. v. COMMISSIONER OF INTERNAL REVENUE, and four other cases.

### Nos. 3152–3156.

Circuit Court of Appeals, Fourth Circuit.

Oct. 12, 1931.

E. L. Hogsett, of Huntington, W. Va. (Livezey, Hogsett & McNeer and John T. Delaney, all of Huntington, W. Va., on the brief), for petitioners.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and WAY, District Judge.

SOPER, Circuit Judge.

The petition for review in each of these cases seeks the correction of an order of the United States Board of Tax Appeals promulgated on April 14, 1930, whereby it was determined that the petitioner, one of the

stockholders of the Mabel Coal Company, is liable, as transferee, for a deficiency in income and profits taxes due by that company for the fiscal period from January 1, 1919, to November 30, 1919. The Mabel Coal Company was the successor in title to the Huff Mining Company. The two corporations had the same stockholders, and except that the number of outstanding shares in the second was greater, the situation in both corporations was identical. For our purposes the facts may be discussed as if but one corporation was involved.

■ It acquired certain assets, consisting of a coal mining lease in Logan county, W. Va., and certain machinery and equipment for a sum not in excess of $80,231.37, which were sold on December 1, 1919, for $130,000. A distribution of the proceeds of the sale, except the sum of $9,675, which was used to discharge the indebtedness of the company, was made in 1919–1920 among the stockholders, and the corporation was then dissolved. Since the corporation stripped itself of all its assets by this act, each stockholder became liable under section 280 (a) (1) of the Revenue Act of 1926, ch. 27, 44 Stat. 9, 61, 26 USCA § 1069 (a) (1), for any deficiency in income or profit taxes lawfully assessed against it to the full extent of the distribution received. Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289. The stockholders, however, contend that no profit resulted from the sale of December 1, 1919, because the property then brought the same amount, to wit, $130,000, which they themselves paid when they acquired the total outstanding stock of the corporation on September 9, 1918. They say that it is only by making an artificial and unreal distinction between the corporation and its stockholders that a profit can be calculated.

The facts are that the corporation was organized in 1917 with a total outstanding stock of 500 shares. It acquired the mining property for $80,231.27 and entered actively into the business of mining coal. In the next year the ownership of the corporation changed hands. A contract was made on September 9, 1918, by which stockholders holding 425 shares sold their stock to the petitioners or their predecessors in title. The price was $110,500, which represented 425/500 of $130,000, the total value attributed to the leasehold and other assets of the business. For the purposes of this decision, it may be assumed, as petitioners contend, that the petitioners then acquired all of the

stock, 500 shares, for $130,000, for when the transfer was completed on September 14, 1918, all of the shares of the corporation had been transferred to them for that amount of money. They contend that in truth they acquired not the stock of the company but its assets for $130,000, and that they sold their property without profit for the same amount on December 1, 1919. In short, they would ignore the corporate entity and deal with the situation as if the corporation did not exist.

The contract of September 9, 1918, forms the basis of this argument. No value was expressly placed therein upon the shares of stock, but the purchase price was fixed upon the recommendation of experienced mining men who inspected the property for the buyers before the contract was executed and estimated that the property was worth $130,000. Under the terms of the contract, the sellers bargained and sold their 425 shares of stock for the sum of $110,500 plus the total amount of the accounts receivable and less the total amount of the accounts payable, as shown by the books of the company. The buyers agreed to assume payment of all the indebtedness of the company up to the sum of $27,500, but the contract provided that in the event the indebtedness should exceed the sum of $27,500, the excess should be charged back to the sellers in proportion to the stock sold by them and the buyers should receive proportionate credit upon their respective notes. The consideration was to be paid partly in cash and partly by notes, and upon the payment of the cash and the execution of the notes, the sellers agreed to assign their stock to the buyers. These facts, it is contended, justify the conclusion that the purchasers did not recognize the corporation as an entity distinct from the stockholders; that they were interested in the value of the physical assets and not in the value of the shares; that the assets, rather than the shares, constituted the property purchased, and the shares were transferred merely as the means by which title to the assets could be acquired. Hence it is said to be inequitable to recognize the corporate entity in this case, for to do so would be to prefer substance to form and to tax the petitioners upon a theoretical property which had no existence in fact.

■ We are satisfied, however, that the Board of Tax Appeals made no error in this respect. It is true that the importance of regarding matters of substance rather than

922

matters of form must be kept in mind in applying the provisions of the Sixteenth Amendment and the income tax laws enacted thereunder, United States v. Phellis, 257 U. S. 156, 168, 42 S. Ct. 63, 66 L. Ed. 180; and that the courts have the power and the duty to look through the form of a corporation in order to determine a stockholder's rights and liabilities under the taxing statutes. "But," as was said in Eisner v. Macomber, 252 U. S. 189, 213, 40 S. Ct. 189, 195, 64 L. Ed. 521, 9 A. L. R. 1570, "looking through the form, we cannot disregard the essential truth disclosed, ignore the substantial difference between corporation and stockholder, treat the entire organization as unreal, look upon stockholders as partners, when they are not such. * * *" The facts in the pending case do not warrant the assumption that the corporation was not the real owner of the property which stood in its name. The business was organized in 1917 in corporate form; and the record is quite barren of fact or suggestion from which one might infer that the persons who formed it were tenants in common of the property purchased, or members of a partnership rather than shareholders in a corporation. That body was a reality and took title to the property acquired. The stockholders had no title thereto and conveyed none under the contract of 1918. They transferred and assigned merely their shares of stock, and hence these, as distinguished from the assets of the corporation, were all that the purchasers acquired. It is immaterial that the price of the stock was fixed with reference to the value of the physical assets and to the amount of accounts receivable and accounts payable, a sensible provision from the buyers' standpoint, or that the sellers who parted with their entire holdings took the precaution to require the purchasers to assume personally the payment of the company's debts. None of these circumstances alters the important facts that the tangible and intangible assets of the business belonged to the corporation while the stockholders owned only their shares; and that the buyers deliberately purchased the property of the shareholders and not that of the corporation. After the sale the corporation continued to conduct the business, and when the stockholders organized the Mabel Coal Company in 1919, they caused the assets and the mining lease to be transferred to it by the preceding corporation.

It follows that the shareholders, who received the assets of the corporation, are subject to its liabilities including the taxes due the United States. The Board found the profit on the sale of the corporation's property to be $49,768.63, the difference between $130,000, the selling price, and $80,231.37, the cost. But we think that the Board erred in not allowing, as a deduction in estimating the net income for the period, the sum of $9,675 expended by the company in payment of its debts after the sale of its assets. The buyers paid $25,000 in cash and the balance of $105,000 in notes payable from 60 days to 36 months thereafter. There was a partial distribution to the shareholders of $12,000 in cash, and $105,000 in notes in proportion to their holdings. Subsequent payments of cash to the shareholders brought up the total distribution of cash to $15,325, or a total distribution of cash and notes of $120,325. No other distribution of any kind was made to the stockholders in the year 1919 or subsequently. Certain mining expenses were paid and certain capital investments were made in 1919, and the difference between the proceeds of the sale and the total distribution to the stockholders, namely, $9,675, was used to pay the company's debts. It is evident that this sum should be deducted in order to ascertain the net income of the corporation for the period and the decision of the Board must be reversed in order that this correction may be made.

The petitioners made the further point in this court that the sale of December 1, 1919, was a casual sale of personal property in which the initial payment of $25,000 was less than one-fourth of the total purchase price of $130,000, and hence that under the provisions of sections 212 (d) and 1208 of the Revenue Act of 1926, 44 Stat. 9, 23, 130, 26 USCA § 953 (d) and § 953a, the corporation was required to return as income in the taxable year only that proportion of the installment payment actually received in that year which the total profit bore to the total contract price. We think that this point is well taken. It was not raised in the petition for review filed with the Board of Tax Appeals nor at the hearing before the Board; nor was it assigned as error in the petition to this court for the review of the decision of the Board, and under ordinary circumstances, we should doubt the petitioners' right to raise the question for the first time in their brief in this court. See Blair v. Oesterlein Co., 275 U. S. 220, 225, 48 S. Ct. 87, 72 L. Ed. 249; Magruder v. Drury, 235 U. S. 106, 113, 35 S. Ct. 77, 59 L. Ed. 151; San Juan Light & Transit Co.

v. Requena, 224 U. S. 89, 97, 32 S. Ct. 399, 56 L. Ed. 680. But since the case must be sent back for the correction of the error previously discussed, the petitioners may request the Board in the further proceedings to apply the installment provisions of the statute.

Reversed and remanded for further proceedings in accordance with this opinion.

Reversed.