## BROOKS v. HILL–SHAW CO.

### No. 7288.

Circuit Court of Appeals, Seventh Circuit.

Jan. 2, 1941.

Rehearing Denied Feb. 26, 1941.

Joseph D. Ryan and Marshall Solberg, both of Chicago, Ill., for appellant.

Hinshaw & Culbertson, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from a judgment in favor of the defendant in a personal injury suit, notwithstanding a verdict in favor of the plaintiff, finding her entitled to $19,566.66 damages.

The action was brought to recover for injuries sustained when a glass coffee maker filled with boiling water and coffee broke, badly burning appellant. The complaint charged negligence in the construction and manufacture of the coffee maker,[1] and appellant relied upon the doc-

---

[1] "That defendant carelessly, negligently and improperly made, manufactured and constructed the aforesaid coffee maker, vaculator or coffee brewer, whereby

trine of res ipsa loquitur to sustain its charge of negligence.

At the time the accident occurred, March 18, 1937, appellant owned and operated a restaurant and tavern in the city of St. Louis, Missouri. She had been in this business for about nine months, and at the location where the accident occurred for about four and a half months. When she first went into the business she was furnished a set of coffee makers by a business man who sold her all the coffee she required for her business. In the beginning she used one set of the brewers. When she started in at her new location she needed more, and was furnished a new unit similar to the first. These coffee makers were called "Vaculators." Each of these units consisted of a two-burner electric stove, and two coffee brewers, each with an upper and a lower bowl. According to directions accompanying them, when they are to be used, the lower bowl is filled with water to a specified height, which is then heated. The upper bowl extends into a funnel or tube which may be fitted into the lower bowl. It is prepared for operation by placing a filter at the opening of the bowl into the tube or funnel, and then putting in a specified amount of finely ground coffee. As the water in the lower bowl approaches the boiling point, the upper flask is fitted down into the lower bowl, with a rubber gasket around the top of the tube to hold it firm. The expansion of steam in the lower bowl causes the water in it to rise through the tube and filter into the upper bowl, where it comes in contact with the coffee. When no more water will rise, the apparatus is removed from the heat, the coffee is stirred, and as the contents cool, the water runs back through the filter, down the tube into the lower bowl.

There is no dispute over the fact that the original units used by appellant were manufactured and assembled by appellee and by it sold to one Sohm, doing business as the Century Tea and Coffee Company, who in turn delivered them to appellant, to be used by her free of charge as long as she continued to use his products. Appellee included a set of directions for its use with each unit. There was no identifying mark on the glass bowls. Replacements were to be made whenever needed, and one such replacement was made two days before the accident, when Sohm delivered a new upper flask to take the place of one broken by appellant in handling. This was no doubt delivered complete with a new rubber gasket to fit it into the lower bowl, as indicated by the catalogue on replacement parts, and appellant's testimony that she thought the bushing came with the bowl.

Appellant's story of the accident was that she was in the kitchen and had begun to prepare four bowls of coffee, following the directions in every respect. She testified that the apparatus was all apparently in good condition, with no apparent cracks or defects. She had placed the upper flasks in the lower bowls and was waiting for the water to rise so that she could remove them from the heat, and as she stood near the cabinet on which the units were kept, one of the upper flasks suddenly shot up from its lower bowl, striking her shoulder and spilling the hot water and ground coffee all over her right arm, shoulder, and chest. She grabbed the flask and flung it on the cabinet, screaming for help. There was no one in the kitchen with her when the accident occurred. Various persons in the restaurant and elsewhere around the premises testified that they heard a sharp noise like an explosion before appellant's scream. Appellant was badly burned. Appellee does not question the seriousness nor the permanence of her injuries.

No one, not even appellant herself, saw what actually happened before she was struck—she was not looking at the apparatus when the bowl shot up. After the accident, the upper flask was found on the cabinet where appellant had placed it, with the bowl intact. The tube, broken off below the rubber gasket, was found in the lower bowl. This upper flask was

said coffee maker was unable to withstand heat when regularly, usually and ordinarily and necessarily applied in the regular, usual and ordinary preparation of coffee in said coffee maker, and was otherwise carelessly, negligently and improperly made, manufactured and constructed so that while hot coffee was being prepared in same as aforesaid, said coffee maker was unsafe for such use and was liable to burst and explode, causing heated water in same to escape, and that said coffee maker was in such defective condition as aforesaid from the time of its manufacture until received by this plaintiff as above described."

itself broken later, in transit from St. Louis to Chicago, so it was not introduced in evidence at the trial, although the tube and the top of the funnel part, with the rubber gasket, were before the trial court and have been examined by us.

In view of the fact that the principal question presented by this appeal is as to the applicability of the doctrine, res ipsa loquitur, to the facts here involved, we deem it unnecessary to state the facts further. Appellant presented testimony tending to prove that appellee made the equipment and sold it, though not to her; and that that equipment exploded, injuring her seriously. She herself testified that she followed directions furnished by appellee for the use of the equipment in every respect; and that that equipment was apparently in good condition, so far as she could see. She made no attempt whatever to prove any defect in the glass, nor did she make any specific charge as to defectiveness, relying solely on the fact that an accident occurred while she was using the equipment for the uses and in the manner intended, to prove that the equipment must have been defective or the accident would not have occurred.

Appellee moved for a directed verdict at the close of appellant's evidence, and again at the close of all the testimony. The court reserved its rulings on both motions, and submitted the cause to the jury, together with a special interrogatory requested by appellee, "Do you find that the coffee brewer, which is alleged to have caused injury to the plaintiff, when used with ordinary care was an inherently or imminently dangerous instrumentality?" The jury answered this interrogatory in the affirmative, found appellee guilty, and assessed the damages at $19,566. Appellee thereupon moved for judgment notwithstanding the verdict, or in the alternative, for a new trial. Judgment n.o.v. was then entered on appellee's motion.

 We agree with appellee that the doctrine of res ipsa loquitur is not applicable to the facts here presented. "When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care." San Juan Light Co. v. Requena, 224 U.S. 89, 32 S.Ct. 399, 401, 56 L.Ed. 680. We think this may not be invoked to take the place of proof of appellant's charge of negligence. Here we have a utensil which had been used before—even if it were the new one appellant received two days before, the evidence was that she had used it several times. While she testified that she had used the new one "two or three times," she also testified that she used each one on an average of five or six times a day. However, there was a complete absence of proof that it was the new one which broke. Appellant said she had no way of telling. However, from our own examination of the rubber gasket enclosing the fragments of the neck of the flask, it is obvious that that gasket had been in use many times, and was not a new one furnished two days before the accident. Appellant testified that she had used two of the coffee makers for over eight months, and the other two for over four months. During that time the utensils were under her management and control, and appellee had absolutely nothing to do with them.

However, appellant argues that the instrumentality was under the sole management and control of appellee at the time the alleged negligence occurred, namely, when it was being constructed—that her charge is of negligence in the construction so that the utensil was unable to withstand the heat to which it had to be subjected in the normal use of it. We think this is negatived by appellant's own testimony that it had withstood the heat at least two or three times, and more likely, over three hundred times. This being the case, the thing does not speak for itself, and appellant must bring in proof of her charge of negligence. It may be that the glass was defective, and that such defect did not immediately disclose itself. If so, it was a matter of proof, not of presumption. Appellant calls our attention to the fact that flasks (introduced as exhibits), said to have come right off the assembly line of appellee's plant, and used by appellee's expert witnesses for conducting a test, were of much heavier glass than the broken tube involved in the accident. However, there was no evidence that the thinner

glass was less able to withstand the pressure to which it was expected to be subjected, and we certainly cannot assume, nor should the jury have been allowed to speculate over whether the relative thickness of the two tubes was a matter of any significance.

Appellant cites three cases in which courts have held that various types of coffee makers (none similar to the one here involved) were inherently dangerous instrumentalities, hence, that the persons injured by their explosion could recover from their manufacturers in spite of the absence of privity of contract between them. In the first, Reed & Barton Corp. v. Maas, 1 Cir., 73 F.2d 359, 362, the court said, "While no inference of negligence could properly be drawn by the jury simply because the accident occurred, as the urn had not been in the possession and control of the defendant for at least seven years * * * the jury was entitled, however, from the evidence offered by both sides, to make reasonable deductions as to the cause of the accident." There was specific evidence that the accident was due to a faulty design and construction of the urn in that there was no support for the urn except a thin film of solder by which the base was joined to a flat metal bead which alone rested on shoulders of the four legs, and that if this solder melted, the urn would drop down and topple over.

The second case, Statler v. George A. Ray Mfg. Co., 195 N.Y. 478, 88 N.E. 1063, involved the explosion of a large three-battery urn with a central boiler three or four feet in height, the bottom of which blew out practically the first time it was put into use. The question of negligence does not appear to have been argued, at least not on the appeal, the two questions presented being liability in the absence of privity of contract, and evidence as to damages.

The third case, Hoenig v. Central Stamping Co., 273 N.Y. 485, 6 N.E.2d 415, involved a heavy urn, the handles of which broke off when it was lifted. Plaintiff charged negligence in construction and inspection, and the appellate court without opinion, affirmed a judgment for plaintiff, with a vigorous and convincing dissenting opinion contending for dismissal of the complaint.

The only similarity between these cases and the one at bar is that all involved various types of coffee makers. All held the manufacturer liable in spite of absence of privity of contract between him and the person injured by the explosion, on the theory that the instrumentality was an inherently dangerous one, as the jury found the one involved in the case at bar. We think the establishment of this fact does not aid appellant in the case at bar. Of course, if the jury had found that the negative of the proposition was true, in the admitted absence of privity of contract, there could have been no liability on the part of appellee to appellant. But establishing that fact of the inherent dangerousness of the instrumentality, does not ipso facto establish the liability of the manufacturer of that instrumentality. It must still be shown that its negligence caused the accident. Under the facts here presented, with the utensil under the sole domination and control of appellant for some time before the accident, she could not, by merely charging faulty construction, rather than negligence in operation, rely upon the doctrine of res ipsa loquitur to establish the first essential element of her case. Appellant is not entitled to the benefits of res ipsa loquitur upon a bald assertion that she followed instructions in every particular, and that the flask was not cracked when she started to use it.

Appellant refers to another type of case involving exploding glass, citing two Missouri cases where accidents were caused by the explosion of bottles containing carbonated beverages. See Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001, and Riecke v. Anheuser-Busch, 206 Mo.App. 246, 227 S.W. 631, in both of which the courts held the doctrine of res ipsa loquitur applicable. We do not consider the situations involved in those cases in any way analogous to that of the case at bar.

Appellant has devoted considerable attention to the proposition that the Missouri construction of the doctrine of res ipsa loquitur must be followed in the case rather than the Illinois. Since we are convinced that the facts of the case render the doctrine wholly inapplicable, it is unnecessary for us to discuss this question. Here, the evidence offered in support of appellant's case did not show that she was entitled to the relief prayed, hence the court might well have granted appellee's motion for a directed verdict at the

close of that evidence instead of reserving its ruling. There was no error in its ruling on the motion for judgment n.o.v.

Judgment affirmed.

Judge TREANOR concurs in the result.