**CHICAGO, R. I. & P. R. CO. v. McCLANAHAN.**

No. 12569.

United States Court of Appeals
Fifth Circuit.

April 15, 1949.

Rehearing Denied May 16, 1949.

---

834

Allen B. Guthrie, of Ruston, La., for appellant.

Ben C. Dawkins, Jr., and Jackson B. Davis, both of Shreveport, La., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This action was instituted by the appellee for personal injuries allegedly sustained by him on December 14, 1946, at Shreveport, La., when a heavy door of the freight car that he and other employees were getting ready to unload fell upon him. The Fidelity & Casualty Company of New York intervened on account of workmen's compensation payments made by it to the plaintiff. The defendants were the Illinois Central Railroad Co., Kansas City Southern Railroad Co., Guy A. Thompson, Trustee of Missouri Pacific Railroad Co., Joseph B. Fleming and Aaron Colnon, Trustees for the Chicago, Rock Island & Pacific Railroad Co. The doctrine of res ipsa loquitur was invoked by the plaintiff-appellee. The verdict and judgment were solely against the defendant-appellant, a part of which was awarded to the intervener.

These are the facts: On December 3rd, 4th, or 5th, 1946, the Peoria Terminal Company, a switching corporation, which was not made a party defendant, delivered to Corn Products Refining Company at Pekin, Illinois, an empty freight car to be loaded with sugar for shipment to Monroe, La., and Shreveport, La. The Peoria Terminal Company carefully inspected said car, and found it in good condition, prior to its delivery to said refinery. After such delivery and before being loaded, the car was again inspected by two experienced employees of the Corn Products Refining Co., who were particularly interested in the doors of the car, which, if defective, might be the cause of damage by weather to sugar, their destructible product.

The car in question belonged to the Pennsylvania Railroad Company, being initialled and numbered P. R. R. 32,916. It was loaded or placed for loading on or about Dec. 5, 1946. After it was loaded and the doors sealed, a through bill of lading for the same was executed by the Illinois Central Railroad Co., which also issued its waybill for partial unloading at Monroe. From December 6th to Decem-

ber 13th or 14th, 1946, the car was in the possession of said Illinois Central Railroad Company, except when it was switched to the warehouse of the Faulk-Collier Bonded Warehouse, Inc., in Monroe, La., for partial unloading, said switching being done by the trustee of the Missouri Pacific Railroad Co., as agent of the line-haul carrier. The car remained in the possession of said Warehouse, Inc., for a day or two, when the seals on both doors were broken, the doors opened, and the car partially unloaded, 400 sacks of corn sugar being removed therefrom. Thereafter, the doors of the car were closed and sealed; and the car was returned by the trustee of the Missouri Pacific to the Illinois Central Railroad Company. The breaking of said seals and partial unloading at Monroe were done without trouble or unusual incident; the doors were easily opened by hand; and no defect in the car of any kind interfered with the operation. Before undertaking said switching movement, the car was carefully inspected by said trustee, and no defect of any kind was found as to the doors or elsewhere.

After the car was returned to the Illinois Central, and by that road hauled to Shreveport, La., it was on the evening of December 13, 1946, turned over to the Kansas City Southern Railway Company for switching to the warehouse of the Terminal Warehouse & Transfer Co., the employer of the plaintiff-appellee. The next morning about 8 o'clock, December 14, 1946, the car having been spotted by the railroad company for unloading by said warehouse company, the seals of the car doors were broken and one of its doors opened without difficulty, presumably by employees of said warehouse. A little later that morning, while engaged in his customary duties, plaintiff and two other employees were ordered to begin unloading the car. When they undertook to open the other door of the car preparatory to carrying out their instructions, they found it difficult to open, and used a crowbar twice to move it. This bar was four or four and one-half feet long; the sharp end of it stuck into the edge of the floor, and its force was exerted with great pressure. After putting aside the crowbar, and while appellee and two fellow workmen were pulling and pushing the door with their hands, it suddenly became dislodged from its position, and fell upon the plaintiff, causing serious injury to him. The door weighed about 800 pounds. The question presented on this appeal is whether the evidence, aided by the doctrine of res ipsa loquitur, is sufficient to support the verdict.

The Peoria Terminal Company was the initial carrier in the chain of operations, with the other railroads serving as intermediate, or connecting, and delivering carriers. Pursuant to the verdict of the jury, a judgment was entered in favor of all of the defendants below except the Chicago, Rock Island & Pacific Railroad Company, which is the sole appellant here. The liability of appellant is sought to be predicated upon the negligence of the Terminal Company, which is alleged to be wholly owned and controlled by the appellant, and to be operated with the appellant as a single railway system, so as to bring the two companies within the doctrine announced in Davis v. Alexander, 269 U.S. 114, 46 S.Ct. 34, 70 L.Ed. 186; but we pass this issue, i. e., as to the domination of the Terminal Company by the appellant, because we are of the opinion that the evidence is not sufficient to warrant a finding of negligence against either the Terminal Company or the appellant. The evidence shows that the Peoria Terminal Company discharged its duty of inspection without finding any defect in the car; the same is true as to the appellant; and the remaining question is: whether the Terminal Company or the appellant, under the doctrine of res ipsa loquitur, was required to take up the burden of explaining the proximate cause of appellee's injury.

■ This doctrine, as first established in England and Scotland, was substantive law, the term having been borrowed from the Roman law, to which the doctrine itself may be traced. American state and federal courts at first accepted the British concept, and there is still strong authority for the contention that the doctrine, when applicable, compels the presumption of negligence on the part of the defendant, which makes out a prima facie case for the plaintiff; and, while the burden of

proof strictly never shifts but remains with the plaintiff as to the facts alleged by him, yet he may stand upon his prima facie case, and the defendant must by evidence rebut it or suffer a verdict against him.[1] The Supreme Court has held the contrary in Sweeney v. Erving,[2] but that case has been severely criticized;[3] and we are not bound by it here, because our decision is controlled by the law of the place where the injury was done.[4]

 Under the law of Louisiana, which governs here, when a thing that causes injury, without fault of the injured person, is shown to have been under the exclusive control of the defendant, and the injury is such as ordinarily does not occur if the one having such control uses due care, then the presumption is that the injury was caused by the defendant's lack of proper care. Neither Professor Thayer nor Wigmore sought to destroy such presumptions. As pointed out by Professor Morgan: "Mr. Thayer was too wise to suppose he could destroy them. * * * He put them in another field, and that field he did not seek to simplify; he merely divided it into those separate subjects of the substantive law, with the facts of which the presumption was concerned." Morgan, Presumptions, 12 Wash.L.Rev. 255, 279 (1937). Wigmore treats the res-ipsa doctrine and its effect separately from presumptions in general. 9 Wigmore on Evidence (3rd Ed. 1940), 377, Sec. 2509. He says: "But whether the rule creates a full presumption, or merely satisfies the plaintiff's duty of producing evidence sufficient to go to the jury, is not always made clear in the rulings. What the final accepted shape of the rule will be can hardly be predicted." Ibid, pp. 377 et seq.[5]

Our function is to find the local law on the subject and apply it to the particular facts of this case. The basic statute is Article 2315 of the Louisiana Civil Code, which reads in part as follows: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it." In Urban Land Co. v. City of Shreveport, 182 La. 978, 162 So. 747, 748, the Supreme Court of Louisiana held that the charges of negligence were as specific as it was possible for the plaintiff to make them, and quoted with evident approval the following definition of the doctrine of res ipsa loquitur:

"'Where that which causes an injury is under the management and control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management and control use proper care, it affords reasonable evidence in the absence of explanation, that the accident is the result of the want of care. See 9 R.C.L. 1259, 20 R.C.L. 185.' The doctrine is stated substantially the same in 45 C.J. p. 1193, § 768, and

---

[1] Gleeson v. Virginia Midland Railroad Co., 140 U.S. 435, 11 S.Ct. 859, 35 L.Ed. 458; San Juan Light & Transit Co. v. Requena, 1912, 224 U.S. 89, 98, 99, 32 S.Ct. 399, 401, 56 L.Ed. 680, 684; Louisville & N. R. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711; Cincinnati, N. O. & T. P. Ry. Co. v. South Fork Coal Co., 6 Cir., 139 F. 528, 1 L.R.A.,N.S., 533; Pitcairn v. Perry, 8 Cir., 122 F.2d 881.

[2] 1913, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas.1914D 905.

[3] Mark Shain's Res Ipsa Loquitur, pp. 182, 187, 221, et seq.

[4] Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Martin & Co. v. Cobb, 8 Cir., 110 F.2d 159.

[5] The theory that the burden of proof never shifts was not new to Greenleaf. We quote the following from citations in his work on evidence, 13th ed. (1876), p. 93. Note 1: "The burden of proof and the weight of evidence are two very different things. The former remains on the party affirming a fact in support of his case and does not change in any aspect of the cause; the latter shifts from side to side in the progress of a trial according to the nature and strength of the proofs offered in support or denial of the main fact to be established." Note 2: "In general, where the plaintiff makes out a prima facie case, although the burden always remains on him to support his case, yet this prima facie case supports it, and becomes conclusive unless met and controlled by the defendant; and, while the burden of proof does not strictly shift, but still remains with the plaintiff upon the facts he alleges, yet he may stand upon his prima facie case, and the defendant must take up the onus of controlling it, and this burden is upon him."

Subsequent writers merely called this onus "the burden of going forward with the evidence."

was applied in Lykiardopoulo v. New Orleans & Carrollton Railroad, Light & Power Co., 127 La. 309, 53 So. 575, Ann.Cas. 1912A, 976." [6]

Thus the rule in Louisiana as above stated is not appreciably different from the historic doctrine of res ipsa loquitur, as announced in certain English decisions, for instance, Scott v. The London, etc., Dock Company,[7] where the injury complained of was caused by the fall of a barrel of flour from an upper window, and the defendant introduced no evidence but relied on the alleged lack of proof of negligence on its part. The Chief Justice said: "There must be reasonable evidence of negligence. But where the thing is shewn to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

One early jurist said: "It is the duty of persons who keep barrels in a warehouse to take care that they do not roll out, and I think that such a case would, beyond all doubt, afford prima facie evidence of negligence. To say that a plaintiff who is injured by it must call witnesses from the warehouse to prove negligence seems to me preposterous * * * but if there are any facts inconsistent with negligence, it is for the defendant to prove them." In Byrne v. Boadle,[8] the court said: "There are certain cases of which it may be said res ipsa loquitur, and this seems one of them. In some cases the courts have held that the mere fact of the accident having occurred is evidence of negligence, as, for instance, in the case of railway collisions."

Let us examine further the facts in the case under review to see if they speak negligence against the appellant or Peoria Terminal Company, the two persons most remote, in time and place, from the alleged speaking res of any carrier that handled this car. That appellee's claim must stand upon the ground of negligence is clear. That such negligence is an affirmative fact which must be shown by him who alleges it must be conceded. Neither can it be denied, until the contrary is shown, that a common carrier in the conduct of a lawful business upon its own premises is presumed to have exercised due care. No culpable negligence of any carrier having been proven by evidence of any specific act of omission or commission, the question here is not whether the injury might have occurred without culpable negligence, but whether in the particular case the circumstances of the door falling raise a presumption that it was due to the want of ordinary care on the part of appellant or the Peoria Terminal Company. In other words, does the very nature of the adverse or disastrous event itself supply evidence of the negligence of either of said parties, like a pot falling from a window, or a coach being driven upon a sidewalk, and injuring a pedestrian; or two trains under the same management colliding violently?

We think not. The door was in good condition when the car was partially unloaded at Monroe, Louisiana, and when it was redelivered to the Illinois Central Company. Also, it is reasonably certain that nothing appeared to be wrong with the door until after the car was spotted for

6 See, also, Le Blanc v. Sweet, 107 La. 355, 31 So. 766, 90 Am.St.Rep. 303; Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205; Louviere v. Louisiana R. & Nav. Co., 146 La. 687, 83 So. 890; A. & J., Inc., v. Southern Cities Distributing Co., 173 La. 1051, 139 So. 477, which holds that the doctrine is not applicable where defendant has no control over the premises or where there is a divided responsibility and the damages may have resulted from a cause over which the defendant has no control;

Kendall v. People's Gas & Fuel Co., La. App., 158 So. 254; Judson v. Giant Powder Co., 107 Cal. 549, 40 P. 1020, 29 L.L.R. 718, 48 Am.St.Rep. 146; 22 Illinois Law Review 724 (1928); 20 Minn. Law Review 241 (1936); 22 Tulane Law Review 125 (1937).

7 1865, 3 H. & C. 596, 13 W.R. 410, 11 Jur.,N.S., 204, 34 L.J.Ex. 220, 13 L. T. 148, 159 Eng.Rep. 665.

8 1863, 2 H. & C. 722, 159 Eng.Rep. 209.

unloading by the consignee at Shreveport. Then, according to the evidence, at 8 o'clock on the morning of the 14th of December, 1948, an unidentified person had opened the other door of the same car; and had tried to open the door that fell, but only succeeded in leaving it ajar from 6 to 18 inches. Someone had already broken the seals on the doors after the car was spotted. Some employee of the consignee evidently used a crowbar in an effort to open the door, and damaged the floor of the car. Then the appellee and two others began pulling, pushing, and jerking the door, and hanging on it,[9] and something caused it to fall. We cannot say exactly what it was, but the door had come a long distance without falling, and the fact that it fell does not tell us whom to blame for the injury. The appellee and his co-workers ought to know as much about what caused the injury as anyone else; they were there, and the car was under the control and management of their employer, when the door fell.

"Many accidents do not speak for themselves. The maxim res ipsa loquitur does not, therefore, apply when the circumstances in evidence are of doubtful solution. That there should not be uniformity of opinion as to the applicability of the maxim is due not only to the infinite variety of circumstances under which injuries are inflicted, but to differences in respect to the standard of diligence applicable in different situations. * * * In other words, the presumption is one which arises not from the mere naked fact of an injury, but from the circumstances which characterize the injury. Thus, in Stokes v. Saltonstall [13 Pet. 181, 10 L.Ed. 115] the prima facie case of negligence was made upon evidence that the stage coach was upset, and the plaintiff injured. * * * In each action for a tortious injury the question as to what evidence will make a prima facie case of negligence and require an explanation from the defendant will depend upon the nature and circumstances of the injury and the measure of care due from the defendant." Lurton, Circuit Judge, Cincinnati, N. O. & T. P. Ry. Co. v. South Fork Coal Co., 6 Cir., 139 F. page 533, 1 L.R.A.,N.S., 533.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (concurring).

I concur in all that is said in the majority opinion, and particularly in the statement there made that the law of Louisiana is controlling here.

I desire to add only a word or two with respect to that law as it is declared in the two late Supreme Court cases[1] on which appellee relies.

In neither of these cases did the court depart one whit from the earlier jurisprudence. On the contrary, taking great pains in the Hake case to declare that it was not departing therefrom, it thus pointed out the difference between the cases invoked by defendant and the case then being dealt with:

"While it is true that the possession test seems to have been employed in many of the cases in our jurisprudence to determine the applicability of the res ipsa loquitur doctrine, it is also true that there are other cases, involving a certain type of accident, wherein the matter of possession in the defendant was not an important consideration. Thus, in actions for damages resulting from exploding bottles of carbonated beverages and from leakage of drums of acid, the exclusive possession and control of the instrumentalities by the respective manufacturers is not a requirement. It is important though in an action of that type, and a condition precedent to the application of the doctrine, that the plaintiff prove freedom of fault on the part of all through whose hands the instrumentality passed after it left the manufacturer. When this proof is made, negligence of the defendant is inferred

---

9 One of the witnesses said: "Well, it fell when we hanged on it, and no telling what I would have done if it wouldn't have gotten open. It got to open someway." Tr. p. 198.

1 Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441; Plunkett v. United Elec. Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437.

from the happening of the accident, and to escape liability it must overcome the inference." 28 So.2d page 445.

Further emphasizing the importance of the absence from the proof of evidence that at the time of the accident the thing was not being mishandled, the court said this:

"The trial judge found as a fact, as his written reasons for judgment disclose, that on delivery the cylinder was placed in an upright position on the concrete floor of the storeroom, and there it remained, unused and in the same condition as when delivered, until the occurrence of the fire; and that at no time during that period was it given rough treatment or was otherwise mishandled." 28 So.2d page 446.

In the Plunkett case the court reaffirmed the distinction drawn in the Hake case between the two types of cases, one where control by the defendant was, and the other where it was not, necessary, and, in doing so, made it quite clear that the case before us was not in its nature or in its proof at all like either of those cases. After stating:

"The only reason suggested for denying res ipsa loquitur in this case is that the plaintiff is supposed to have had control of the heater, the general rule being that the doctrine applies only when the defendant is in charge of the thing which does the damage. One reason why this argument cannot be maintained is that the matter falls within the exception made in cases of exploding bottles or other substances in sealed containers. Another reason why the contention must fail is that it is not correct to say that the heater was under plaintiff's control at the time of the damage."

At page 711 of 36 So.2d it went on to say:

"Consider the facts. Plaintiff buys a gas burning heater from defendant who installs it in plaintiff's residence and warrants, impliedly at least, that it will satisfactorily perform the function for which it is purchased. However, less than two days from the time of its installation and without any act by plaintiff, it starts a fire which causes grievous damage to the house. Can it be fairly said in these circumstances that plaintiff, and not defendant, has control of the instrumentality that caused the damage? Or is it more in keeping with common sense and plain justice to hold that, in the nature of things, the heater would not have caused the fire if it was functioning properly and that plaintiff cannot be expected to know whether it was defectively constructed or installed whereas defendant, as seller and installer, is fully able to show a freedom from negligence?"

Further, it thus pointed out the heavy burden resting on a plaintiff in cases like Plunkett's case and a fortiori in cases like the one at bar if he would take advantage of the res ipsa loquitur rule:

"It must be remembered that, in cases like this (unlike most instances where res ipsa loquitur is invoked) the plaintiff does not obtain the benefit of the doctrine by merely showing the unusual accident and the resulting injury. On the contrary, plaintiff is required to establish with certainty that the instrumentality installed by defendant is the source of the damage; that he was without fault and that the time elapsing between the installation and the damage was such as to make it reasonably evident that the damage would not have been caused if the device had been free from defect and had been properly installed. However, when all of these elements are proven, we see no good reason for not requiring the defendant to show freedom from negligence as then it is fair to assume that the accident would not have occurred but for a faulty installation or defect in the heater."

Nothing in the facts or in what is said in either of these cases can afford appellee any comfort here. Indeed, I think they make strongly against his contention.