218 F.2d 654
 Ivory James HILL, Jr., Appellant,
v.
ATLANTIC NAVIGATION COMPANY, a corporation, Gulf Menhaden
Company, Incorporated, a corporation, M/V Promised
Land, her tackle, apparel, etc., and The
Fish Meal Company, a
corporation, Appellees.
 No. 6918.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1955.
Decided Jan. 28, 1955.
 
 Sidney H. Kelsey, Norfolk, Va., for appellant.
 Martin J. McHugh, New York City (Macklin, Speer, Hanan & McKernan, New York City, Hughes, Lttle & Seawell and Leon T. Seawell, Jr., Norfolk, Va., on brief), for appellees.
 Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 Ivory James Hill, Jr., the appellant in this case, was severely burned and permanently injured on November 23, 1952 in a fire on board the Promised Land, a Menhaden fishing vessel at a dock in Beaufort, North Carolina. He brought suit under the Jones Act, 46 U.S.C.A. § 688, against the owners and under the general admiralty law against the vessel. The case was tried by the District Judge without a jury who dismissed the case since he was of the opinion that the appellant had not shown that the fire sprang from anything under the control of the owners or operators of the ship.
 
 
 2
 The Promised Land is a motor vessel of 184 gross tons, 118 feet in length and 21.4 feet in breadth. It carries a crew of 22, including the officers. It has a forepeak in the bottom hold of the bow beneath the galley with bunks for 18 men where all of the crew except the officers slept. The dimensions of this area are 24.11 feet fore and aft, 16.6 feet at its widest beam, and 10 to 12 feet from deck to ceiling.
 
 
 3
 There were no portholes of any kind. Ventilation was furnished by a 10 inch intake ventilator equipped with cowl on deck and two exhaust ducts. Access was furnished by a steep ladder or stairway leading to a door on the outside deck and an escape ladder from the forepeak through a movable grill to the galley. Heat was furnished by a wood-burning stove equipped with a stove pipe through the ceiling. According to members of the crew the fire was started during cold weather in the morning by pouring gasoline on the wood; but, according to the officers, kerosene alone was used for this purpose, and the only gasoline on board was kept under lock and key. Members of the crew also testified that fumes from gasoline as well as noxious vapors from decayed marine matter in the bilge were constantly noticeable in the room.
 
 
 4
 On Saturday night, November 22, 1952, members of the crew had been ashore in town and those who returned to the vessel last after midnight closed the door of the forepeak when they descended to their sleeping quarters. At 5:50 A.M. the next morning a flash explosion took place which was heard by a policeman in his office on shore 100 feet away. He immediately came out on the sidewalk and saw a blaze coming out of the entrance to the forepeak. He turned in an alarm at once and the fire engines came in five minutes. By that time the blaze was dying down and in 20 minutes the fire was quenched by a stream of water directed into the ventilator of the forepeak.
 
 
 5
 The whole crew was awakened by a sudden thud and flash which engulfed the entire space and a wild scramble to escape either by the ladder to the deck or the ladder to the galley ensued. Several members of the crew were burned but none so seriously as was the appellant. None of them were able to say what was the immediate cause of the catastrophe that morning. Inspection after the fire indicated that it was confined largely to the neighborhood of the stairway leading to the forepeak and the inside of the deck door. The explanation of the fire offered on behalf of the appellant was that explosive vapors from gasoline kept in a receptacle in the forepeak to light the fire, and from methane gas produced by decaying fish in the bilge, had been allowed to accumulate in the closely confined poorly ventilated sleeping quarters, and had been set off by a spark or by static electricity from an unidentified source. Expert testimony supported the probability of this explanation on the assumption that explosive gases were present.
 
 
 6
 The District Judge, however, did not credit the testimony of members of the crew that the fire was lighted in the morning by the use of gasoline kept in a receptacle in the forepeak, and that methane gas rose from decomposed matter in the bilges. He accepted the testimony of the respondents which tended to show that gasoline was not available to the crew and that the bilge was so divided that the escape of methane gas to the forepeak was unlikely. The defendants made no attempt to explain the cause of the fire. They suggested that it might have been caused by some one moved by a desire to be revenged upon members of the crew, but they offered no proof to this effect. The District Judge held that since the proof on neither side disclosed the source of the fire, the appellant had failed to make out a case.
 
 
 7
 Under all the circumstances, we are unable to accept this conclusion. The proof shows beyond any doubt that the crowded quarters furnished to the crew, especially when the vessel lay motionless at the dock and the door was closed, were inadequately ventilated and created a condition which called for constant and careful inspection by the operators of the vessel. It is likewise shown beyond question that in this confined space an explosion or flash fire took place, which was quickly extinguished, and the nature of the occurrence was such as to warrant the reasonable inference that the fire was caused by an explosion of inflammable gas that had found its way into the hold of the ship. We think that, in the absence of any explanation, this set of circumstances justifies the inference that the operators of the vessel had failed to use due care to make the sleeping quarters in the hold safe for the occupancy of the crew. It is established that when the place of an injury to a person is under the exclusive control of the owner, and the injured person is on the premises as an employee of the owner and is without fault, and the injury is such as does not occur in the ordinary course of things if the person in control has exercised ordinary care, there is evidence which, in the absence of explanation, warrants the inference that the injury was due to negligence on the part of the person in control. We think that under the evidence such an inference should be drawn in this case and that the appellant was entitled to recover. San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98-99, 32 S.Ct. 399, 56 L.Ed. 680; Sweeney v. Erving, 228 U.S. 233, 238-239, 240, 33 S.Ct. 416, 57 L.Ed. 815; The New Berne, 4 Cir., 80 F.2d 244; Leathem Smith-Putnam Navigation Co. v. Osby, 7 Cir., 79 F.2d 280; Kulack v. The Pearl Jack, D.C., 79 F.Supp. 802; Austerberry v. United States, 6 Cir., 169 F.2d 583.
 
 
 8
 Reversed and remanded for further proceedings.