## GULF, C. & S. F. RY. CO. v. DUNMAN et al.
### No. 1344—5471.

Commission of Appeals of Texas, Section A.
April 30, 1930.

Dibrell & Starnes, of Coleman, Terry, Cavin & Mills, and W. D. Baggett, all of Galveston, and Marshall Butz, of San Antonio, for plaintiff in error.

Baker & Baker and W. Marcus Weatherred, all of Coleman, for defendants in error.

SHARP, J.

Mrs. Mary I. Dunman, joined by her husband, Theo. Dunman, instituted this suit in the district court of Coleman county against the Gulf, Colorado & Santa Fé Railway Company, and alleged substantially as follows:

(a) That Mary I. Dunman is the owner of certain land situated in Coleman county, and that the Gulf, Colorado & Santa Fé Railway Company owned, maintained, operated, and controlled a right of way across her land and operated its trains upon and across same.

(b) That on or about May 5, 1924, by reason of the defendant's negligence in the construction and maintenance of its track and in the construction and handling of its trains, about nine cars of oil and two cars of gasoline were wrecked and overturned on the right of way of defendant crossing plaintiff's land, and the oil and gasoline ran down defendant's track and right of way and into a creek on plaintiff's land and continued to run for many months thereafter, polluting and contaminating plaintiff's water supply, not alone for home and domestic uses, but for the cattle and other live stock, and rendering the water unfit for use and injuring the stock that drank it; that the plaintiff owned a large herd of fine cattle and had no other water for them to drink, and drinking the water and oil caused the cattle to become sick and diseased and diminished their market value, and she was forced to put the cattle upon the market at a time when the cattle were not in condition for market and the market was weak; that the creek was plaintiff's only water supply, and that plaintiff was deprived of the use

of 8,000 acres of land and the rents and grazing value thereof by reason of the oil and gasoline flowing thereon.

(c) That by the use of ordinary diligence the defendant could have prevented the escape of the oil into said creek and could have restrained said oil and kept same from continuing to flow on plaintiff's land and could have removed the same therefrom, but that the defendant negligently and wrongfully failed and refused to do so, and that the oil and gasoline continued to seep into and flow from said right of way and into and through the creek and through plaintiff's land and water supply for many months thereafter.

(d) That plaintiffs are not skilled in the construction and operation of railways or of railway trains and cars and tracks, and are not informed and cannot allege what particular act of negligence caused the overturning of said cars, and is unable to more particularly allege or describe the negligence of the defendant, but that the same is well known to defendant.

(e) Plaintiffs pray for damages against defendant in the sum of $9,000 with interest thereon, all costs of suit, and general relief, etc.

The defendant filed a general demurrer, special exceptions, a general denial, and that the plaintiff was guilty of contributory negligence in permitting her horses and cattle to remain in the pasture where the water had been contaminated by oil and gasoline, and in permitting the animals to become sick and diseased.

The jury found in favor of the defendant upon the issue of negligence in the construction and maintenance of the track and in the construction of the train, but against the defendant on the issue of negligence in operation of the train and that it failed to keep the oil from its cars from flowing into the water supply of plaintiffs, and that this was negligence, and that the oil from the wreck deprived plaintiffs of the use of their pasture, and found that the reasonable cash market rental value of the lands for grazing purposes was $2,000, the jury also found, in answer to a special issue, that plaintiffs were entitled to recover $500 for being deprived of the use of the water for domestic purposes; whereupon, the trial court entered judgment for the sum of $2,500 in favor of plaintiffs and against the defendant.

Appeal was made by the Gulf, Colorado & Santa Fé Railway Company to the Court of Civil Appeals for the Third Supreme Judicial District, and that court suggested that the plaintiffs file a remittitur for the item of $500 found by the jury as damages for being deprived of the use of the water for domestic purposes, and that if the remittitur was filed as suggested, the judgment should be affirmed. In compliance with the suggestion made by the Court of Civil Appeals, the plaintiffs entered a remittitur for the $500, and the judgment of the trial court was affirmed. 15 S.W.(2d) 1053. The railway company applied for writ of error to the Supreme Court, which was granted.

The court submitted this case to the jury upon special issues, and the jury found in favor of the defendant upon the issue of negligence in the construction and maintenance of the track and in the construction of the train. The following additional special issues were submitted by the court to the jury:

"Question No. 7: Was the defendant Railway Company negligent in the operation of its train at the time and place where said wreck occurred? Answer this question Yes or No." To which the jury answered, "Yes."

"Question No. 8: Was the negligence, if any, of the defendant Railway Company in the operation of its train at the time and place where the wreck occurred, a cause of said wreck? Answer Yes or No." To which the jury answered, "Yes."

"Question No. 9: Did the defendant Railway Company fail to keep the oil from its cars from flowing into the water supply of plaintiffs? Answer Yes or No." To which the jury answered, "Yes."

"Question No. 10: Was the defendant Railway Company negligent in failing to keep the oil from its cars from flowing into the water supply of plaintiffs? Answer Yes or No." To which the jury answered, "Yes."

"Question No. 11: Was the defendant Railway Company negligent in failing to remove said oil from the water supply of plaintiffs? Answer Yes or No." To which the jury answered, "No."

"Question No. 12: Did the oil from defendant's wreck deprive plaintiffs of the use of their pasture? Answer Yes or No." To which the jury answered, "Yes."

"Question No. 13: What was the reasonable cash market rental value for grazing purposes of the lands, if any, which plaintiffs were deprived during the time if any said lands could not be used by reason of such oil? Answer in Dollars and Cents." To which the jury answered, "$2,000.00."

 Counsel for the railway company contend that the Court of Civil Appeals erred in upholding the submission to the jury by the trial court of the question whether the wreck was caused by any negligence of defendant in operating its train, there being no evidence to authorize such submission to the jury and in support thereof, urged many propositions, and that under the doctrine of res ipsa loquitur, the plaintiffs are not entitled to recover anything against the defendant under the evidence introduced in this case.

It is true that the authorities bearing upon this proposition are not uniform. In Bouv.

Law Dict. (3d Rev.) vol. 3, page 2908, this expression is defined as follows: "Res Ipsa Loquitur (Lat. the transaction speaks for itself).· A phrase often used in actions for injury by negligence where no proof of negligence is required beyond the accident itself, which is such as necessarily to involve negligence. See 5 Ex. 787. It is thus defined by Erie J., in Scott v. London Docks Co., 2 H. & C. 596: 'When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' This definition has been termed a legal classic; 1 Thomp. Negl. sec. 15, with a note collecting numerous cases."

There was evidence in this case tending to show that the defendant was operating at the time of the wreck a long freight train consisting of many cars, and that it passed through the town of Novice, something like 2½ miles from the scene of the wreck, just a short while before the wreck occurred, and that some of the witnesses testified that the train was running something like 40 to 50 miles per hour, and that the track between the town of Novice and the creek, where the wreck occurred, was curved. The track was under the management and control of defendant and its servants, and the derailment and wreck was such an accident as in the ordinary course of things does not happen if those having the care, control, and operation of the train used ordinary care in its operation, and the wreck itself affords reasonable evidence, in the absence of explanation, that the derailment or wreck arose from want of ordinary care.

The case belongs to that class where the very nature of the wreck or accident of itself, through the presumption it carries, supplies the requested proof of negligence; that is, the circumstances in evidence tend to show that the accident would not have happened if due care had been exercised. When the plaintiffs introduced evidence sufficient to warrant the jury in finding that the operation of the train causing the injury was under the management of defendant and the derailment or wreck was such as in the ordinary course of things does not happen, if those who have the control and management of the train use proper care, it devolved upon the defendant to so explain the occurrence of the wreck or derailment as to remove the presumption of its negligence, which arose from its happening. In other words, when plaintiffs introduced evidence reasonably sufficient to show that the derailment or wreck was caused by defendant's negligence in operating the train, the burden was upon defendant to show that

such operation neither arose nor continued through its negligence. This it undertook to do by the testimony of its employees that the train was carefully handled and that it was inspected from time to time at various points and that it did not know the cause of the derailment or wreck. Counsel· for the defendant contend that the evidence introduced by the defendant destroyed the presumption of negligence raised by the evidence of plaintiffs, and that there was no evidence upon which the jury could base their findings against the defendant and contend that, as a matter of law, plaintiffs are not entitled to recover anything against it. We are of the opinion that the state of the evidence is not such as would authorize a court to hold, as a matter of law, that defendant discharged this burden, but the evidence is such as required its submission to the jury. In this opinion, we are supported by the following authorities: Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 418, 57 L. Ed. 815; Washington v. M., K. & T. Ry. Co., 90 Tex. 314, 38 S. W. 764; G., H. & S. A. Ry. Co. v. Thompson (Tex. Civ. App.) 116 S. W. 106 (W. E. Ref.); G., C. & S. F. Ry. Co. v. Wood (Tex. Civ. App.) 63 S. W. 165; 45 C. J. p. 1221, etc.; Warren v. Tel. Co., 196 Mo. App. 549, 196 S. W. 1030.

We have no better definition of the rule of res ipsa loquitur than that given in the opinion of Sweeney v. Erving, supra, in which Justice Pitney, rendering the opinion of the Supreme Court of the United States, says: "In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well-considered judicial opinions."

Plaintiffs alleged that the defendant was negligent in not preventing the oil and gasoline running out of its cars from entering the stream and polluting plaintiffs' water supply, and the evidence shows that the defendant did not prevent the oil from escaping off its right of way onto the property of plaintiffs and polluting their water supply, and in view of this record, the trial court was justified in submitting to the jury·

the foregoing issues. Independent of the findings of the jury to issues Nos. 7 and 8, the judgment of the trial court finds support in the findings of the jury to issues Nos. 9, 10, 12, and 13.

We therefore recommend that the judgment of the Court of Civil Appeals affirming the judgment of the trial court be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.