THOMPSON v. JASON.

No. 12644.

Court of Civil Appeals of Texas.

Galveston.

Feb. 25, 1954.

On Filing of Remittitur March 11, 1954.

Rehearing Denied March 18, 1954.

Hutcheson, Taliaferro & Hutcheson and Woodul, Arterbury & Wren, Houston, Roy L. Arterbury, Houston, of counsel, for appellant.

Jones, Jones & Brian, Marshall, and Otis Scruggs, Jr., Houston, Franklin Jones, Marshall, of counsel, for appellee.

CODY, Justice.

Appellee is the Administratrix of the estate of her deceased husband, who met his death at Eunice, Louisiana, shortly after 2 o'clock on the afternoon of February 1, 1951, while working as a brakeman for appellant. The deceased was crushed to death as he rode on the side of a boxcar which, after being derailed, collided with the side of a warehouse, at the side of which the boxcar was being spotted for un-

loading. Appellee brought her action under the Federal Employers' Liability Act, and she pleaded the doctrine of res ipsa loquitur as applicable to the derailment of the boxcar. Appellant seasonably sought directed verdicts in its favor but the case was submitted to the jury upon sixteen special issues; and upon the jury's answers thereto as well as upon an agreement of the parties that the reasonable cost of the deceased's funeral was $1,475 the court rendered judgment for appellee for the sum of $76,475. Appellant predicates its appeal upon eight points, which variously urged that the judgment should be reversed and here rendered or that the judgment should be reversed and the cause remanded or that the award of $75,000 to the widow of a 49 year old brakeman was grossly excessive, and that the court was not authorized in this action brought under the Federal Employers' Liability Act to award the funeral expenses as a part of the recoverable damages.

Appellant's first point, which urges that the doctrine of res ipsa loquitur is not applicable under the record in this case because "it was just as probable that the derailment resulted from non-actionable causes as that it occurred from causes that inferred negligence on the part of appellee" must be overruled.

■■■■ In a proper case for the application of the doctrine of res ipsa loquitur, which is a mere rule of evidence, the fact of the occurrence of an act or a happening "warrants an inference of negligence, but does not compel it; that the presumption created by the happening, whether termed a presumption or an inference, is rebuttable. The effect of the application is not to shift the burden of proof to the defendant, but only the burden of going forward with the evidence. * * * where plaintiff has established a presumptive or prima facie case of negligence, by virtue of the doctrine of res ipsa loquitur, it is incumbent upon the defendant, * * * to introduce evidence to explain, rebut, or otherwise overcome the presumption or inference that the injury complained of was due to negligence." Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659, 664. See also Gulf, C. & S. F. R. Co. v. Dunman, Tex.Com.App., 27 S.W.2d 116, 72 A.L.R. 90; San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98–99, 32 S.Ct. 399, 401, 56 L.Ed. 680; Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L. Ed. 815, 818. Perhaps it is not too much to say that the derailment of railroad cars presents a classic example of a happening which calls for the application of the doctrine of res ipsa loquitur. In any case, when appellee proved that the boxcar on which the deceased was riding became derailed without his fault, the burden of proceeding then passed to appellant to overcome the inference that the resulting injury to deceased was due to its negligence. At this point we must report the relevant facts and the jury's findings thereon:

On the Monday and Tuesday preceding the Thursday on which the accident happened, the weather remained from 12° to 13° below freezing and on those days it rained, sleeted and snowed. On Wednesday the subfreezing weather continued but without any precipitation. Again on Thursday the subfreezing weather continued, still without any precipitation. Such a spell of weather in southern Louisiana was practically unprecedented. The accident happened in Eunice, after the train crew had returned from Crowley and were engaged in spotting the boxcar on the service track beside the River Bend Rice Mill warehouse. The boxcar was being pushed in a southerly direction ahead of the engine at between 3 and 4 miles per hour, and had proceeded about 50 feet past the north or nearest corner of the warehouse when the car on which the deceased was riding walked off the track, colliding with the warehouse, crushing the deceased instantly, who was riding on the side of the car next to the warehouse. There had been no violent movement of any kind and the first that the crew members knew of the derailment was when they became aware of the collision. The boxcar was again put back on the rails by the use of blocks and was moved upon the rails with-

out showing any disposition to derail again. The evidence was undisputed that there was no defect in the construction of the rails or of the car wheels or of the roadbed which could have caused the derailment, and the rails were separated from each other the standard width.

The clearance between the side of the boxcar and the warehouse was only 2.44 feet and the appellant had posted next to the warehouse, where members of the train crew approaching it were bound to see it, a sign containing in large letters the word "Warning", and immediately thereunder were the words "Do not Ride Sides of Cars". The evidence showed that at least one of the freight conductors would not tolerate any member of the crew riding the side of the car next to the warehouse. But when the conductor was not in charge, a brakeman would ride that side of the car to pass signals to the engineer, such side being on the righthand approaching the warehouse.

Appellant introduced evidence by members of the section crew that at 9:00 a.m., some five hours before the accident happened, the tracks had been cleared of snow and ice. However, on cross-examination Anderson, the other brakeman of the crew, testified that following the derailment he saw ice on the rails over which the boxcar was being pushed and ice on the tread and flange of the four wheels of the front truck of the boxcar, and also testified that ice was inside the flange ridges when the car rolled past the north end of the warehouse (which was the end of the warehouse nearest the engine); and that the ice extended all over the tracks, that it was solid ice.

Appellant also proved without dispute that a public gravel shell road crossed the tracks involved some 15 feet north of the end of the warehouse and would have the inference indulged that the traffic thereof might have thrown foreign substance on the track which may have caused the derailment.

We have reached the conclusion, however, that under the evidence before the jury it was within the province of the jury to make their following findings: (1) that the derailment was caused by the negligence of the employees of appellant, other than the deceased (as noted above, Anderson's evidence conflicted with that of the members of the section crew in the respects hereinabove stated), (2) that such negligence was the proximate cause, (3) that appellant allowed the track over which the car was moving when it derailed to be in such condition that it would not remain on the rails, (4) that allowing the tracks to remain in such condition was negligence, and (5) same was the proximate cause.

Appellant complains in its second and third points that the court should not have submitted special issues Nos. 1 to 5, inclusive, (the substance of which, as answered, is set out above) because there is no evidence to support same; and that the court should have set aside the jury's answers to such issues, because the same are against the great weight and preponderance of the evidence. What we have said in discussing appellant's first point requires that we also overrule appellant's second and third points.

We overrule appellant's fourth point to the effect that the negligence of appellant in permitting the boxcar to be derailed (as found by the jury) could not, under the record in this case, be a proximate cause of the death of the deceased. As stated above, the deceased was riding the side of the boxcar on the front end, and had passed the nearest end of the warehouse, and had been moved about a car length when the collision occurred. The jury found in answer to special issue No. 14, that the failure of the deceased to heed the warning sign, "Do not Ride Side of Cars" was negligence, but found in answer to special issue No. 15, that such negligence was not a proximate cause. It is true of course that if deceased had not ridden the side of the boxcar next to the warehouse, he would not have been injured by the derailment and the ensuing collision. But it is not contended that the deceased's riding the side of the car next to the warehouse

caused its derailment, and the collision. While the deceased would not have been injured had he obeyed the posted warning, his being on the side of the car next to the warehouse was the condition under which he was injured, and not the proximate cause of his injury. See Terre Haute & I. R. Co. v. Mansberger, 7 Cir., 65 F. 196; Galveston, H. & S. A. R. Co. v. Smith, Tex. Civ.App., 93 S.W. 184, affirmed 100 Tex. 267, 98 S.W. 240. Had the deceased been injured because he leaned too far toward the warehouse, or had been too large a man to clear the 2.44 foot space, his negligence would have been a proximate cause had he become injured. But where, after disobeying the warning, the deceased had exercised such care that his injury resulted only from the derailment, the derailment must bear the onus of being the proximate cause.

What has just been said relative to appellant's fourth point requires that its fifth and sixth points also be overruled. These points present: (a) That the court should have set aside the finding of the jury in answer to special issue No. 15 (namely, that the negligence of the deceased in riding the side of the boxcar was not a proximate cause of his injury), and (b) that deceased's negligence in riding the side of the boxcar in defiance of the warning sign was, as a matter of law, calling (under the Federal Employers' Liability Act) for a mitigation of damages.

Appellant complains in its seventh point that the award of $75,000 to the widow of a 49 year old brakeman is so grossly excessive as to require a reversal of the judgment, or at least a remittitur from appellee in the sum of $50,000. We have concluded that the award was excessive, as hereafter indicated.

Appellee contends that the evidence she presented, based upon sheer mathematical calculation, would have sustained a judgment in her favor of not less than $82,567.96. The evidence showed that the deceased's gross earnings had risen from $3,651.87 in 1946 to $4,624.77, and appellee's evidence has warranted an inference that the deceased's earnings would have reached a peak of $400 a month or more. Furthermore, her evidence was to the effect that the deceased was an extraordinarily healthy man. His life expectancy, according to the American Experience Table of Mortality, was 22.36 years. We cannot say, as a matter of law, that deceased could have continued earning peak wages as a brakeman for the extent of his life expectancy, though we allow that this would be extraordinary for a man of seventy.

■ The evidence by which appellee undertakes to justify her figure of $82,567.96 is that such sum is the cost of a single premium to provide a refund annuity that would afford the monthly income of $400 for the duration of deceased's life expectancy. The evidence further showed the deceased turned over all of his take-home pay to his wife, who would give him back, as occasion required, such small sums as his modest needs required, though the deceased did wear good clothes. However, the deceased's take-home pay was $65 per month, or $780 a year less than his gross income. Of course, the deceased also did work around home, and performed other services which had pecuniary value. It cannot be contended that appellee is entitled to recover the amount of the living expenses of the deceased. The measure of damages of recovery which appellee is entitled to recover under the Act under which she brought this action is the present cash value of the future benefits of which she was deprived by deceased's death, making adequate allowance, according to the circumstances, for the earning power of money. See Note 878, under Section 51, Title 45 U.S.C.A. Such measure of recovery practically corresponds to the damages the beneficiaries are entitled to recover under the Texas death Statute, Vernon's Ann.Civ.St., except that, under the Federal Statute, no recovery for funeral expenses is allowed. Heffner v. Pennsylvania R. Co., 2 Cir., 81 F.2d 28; and see authorities cited under Note 873, Title 45 U.S.C.A. § 51.

■ This suit is governed by the Federal Act. The seventh amendment to the Constitution of the United States provides

that "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examinable in any Court of the United States, than according to the rules of the United States." The phrase "common law" is used in contradistinction to equity, admiralty, and maritime jurisprudence. Parsons v. Bedford, Breedlove & Robeson, 3 Pet. 433, 446, 7 L.Ed. 732. Only the trial court, among Federal courts, ever sets aside a verdict as being grossly excessive, the appellate courts of that system never do so. St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 182 F.2d 949; Reid v. Nelson, 5 Cir., 154 F.2d 724.

■ Here appellee was entitled only to recover the present cash value of the future benefits of which she was deprived by the death of her husband. She was not entitled to recover the future benefits that the deceased would have enjoyed from his take-home pay. The present cash value of the future benefits which a beneficiary has been deprived of is more subject to accurate calculation than is most instances of unliquidated damages. We have concluded that the amount of verdict in excess of $60,000 is grossly excessive. Under authority of Rule 440 T.R.C.P. we rule that the verdict and judgment is excessive by the sum of $15,000, and for that reason only rule that the judgment should be reversed, and we accordingly order the judgment reversed and the cause remanded for a new trial, unless appellee within fifteen days from the handing down of this ruling files a remittitur in the sum of $15,000. However, if appellee files a remittitur in said sum within the specified time, the judgment will be affirmed.

In its eighth point appellant complains of the allowance in the judgment of recovery of funeral expenses in the agreed sum of $1,475. We overrule the point.

■ While, as stated above, the cost of funeral expenses is not recoverable under the Federal Employers' Liability Act, they are recoverable under our State law. Appellee sought such recovery in her petition, and appellant urged no exception. Had appellant excepted, appellee might have brought her action under the State law. While it is true that if contributory negligence had been proved to be a proximate cause, all recovery would have been barred under State law, and does not merely mitigate damages. Under the record in this case we do not believe it was reversible error to permit appellee to recover for funeral expenses sought under her pleading.

Judgment reversed unless remittitur is filed within fifteen days.

HAMBLEN, Chief Justice (dissenting).

I differ with the opinion of the Court only in so far as it affirms that part of the judgment allowing a recovery of funeral expenses. Appellee brought this suit under the Federal Employers' Liability Act. By doing so she avoided the possibility that a finding of contributory negligence on the part of the deceased would defeat her recovery, but limited the effect of such possible finding to mitigation of damages. By her own choice she has made the substantive law of that Act applicable to her cause of action. The Act provides specifically that the only element of damage which can be recovered is the pecuniary loss sustained by the widow and children. Both litigants here agree that funeral expenses are not a recoverable element of damages under the Act. Therefore the theories advanced by appellee to the effect that appellant failed to except to the allegations seeking such recovery, and that the issue was tried by consent, do not support the judgment. Neither does the fact that the Texas Wrongful Death Statute gives a right to such recovery support the judgment. The right of action does not exist at all at common law, but arises only by virtue of statute. Appellee had a choice of statutes under the terms of which she might seek relief. She chose the Federal Employers' Liability Act. Her recovery is in my opinion limited to those elements of

damage for which that Act provides a recovery.

In all other respects I concur in the majority opinion.

### On Filing of Remittitur

The $15,000 remittitur required by our opinion of February 25, 1954 having been duly filed with the Clerk of this Court, the judgment of the trial court will be reformed and affirmed so as to allow plaintiff recovery of $61,475, together with interest thereon at the legal rate from the date of the trial court judgment until paid. The costs of appeal will be taxed against the appellee.

Reformed and affirmed, Chief Justice HAMBLEN dissenting to that portion of our judgment allowing recovery of funeral expenses.