PATROL VALVE COMPANY, Appellant,

v.

John FARRELL, D/B/A John Farrell Lumber Company, Appellee.

No. 6769.

Court of Civil Appeals of Texas.

Amarillo.

June 16, 1958.

Rehearing Denied Sept. 15, 1958.

Simpson, Clayton & Fullingim, Amarillo, for appellant.

James R. Collins, Amarillo, for appellee.

CHAPMAN, Justice.

This case had its inception in the court below in an action for damages growing out of an explosion of a hot water heater installed in a new house then under construction in Dumas, Texas, by appellee John Farrell, d/b/a John Farrell Lumber Company. The heater was manufactured by Rheem Manufacturing Company, a defendant in the court below along with appellant, Patrol Valve Company. The case was tried to the court. After appellee had rested its case appellant and the other defendant just named moved for a judgment on the grounds that appellee had failed to prove a cause of action against either of the defendants, which motion was overruled. After all parties had concluded their testimony both defendants filed a Motion for Judgment, which the court overruled. Thereafter appellant requested findings of fact and conclusions of law, which were made by the court and judgment entered for appellee in the amount of $1,153.35 against only the defendant, Patrol Valve Company. Judgment against Rheem Manufacturing Company having been denied, only the valve company is before us on appeal.

The testimony shows that the hot water heater and valve were installed in the house a few days before the explosion and that on the afternoon of January 17, 1956, apellee's employee, for the first time, turned on the heat and water in the heater. Sometime between 5 P.M. on January 17, 1956, and 8 A.M., January 18, 1956, the heater exploded, causing the house to be flooded with water and resulting in damages to appellee in the amount of $1,153.35.

The valve in question was manufactured by appellant, Patrol Valve Company and, though sold by the same retailer as the heater, was purchased and installed as a separate unit by appellee's employees. If we understand the testimony and exhibits, the installation included a copper tube which ran laterally from the valve above the top of the heater and then upward through the roof of the house, protruding 4 or 5 inches above the roof and then bent down at about a 45-degree angle. The valve in question and a new one like it were introduced in evidence and brought forward to us as exhibits. An examina-

tion of the valves and the testimony in connection with the one in question shows they are fitted inside with a spring attached to a round block with a hole in the end which is filled with a fuse plug. The testimony indicates that when the pressure in the hot water heater reached 140 pounds per square inch the spring with normal functioning was forced upward, allowing the water to flow out through the copper tube and up through the roof. The fuse plug just above mentioned furnishes a double safety feature in that when the temperature of the heater reaches 190 to 192 degrees the fuse plug melts, thus also permitting the water to flow out through the copper tube and out the roof of the house. The testimony is without contradiction that the fuse plug was in its proper place in the valve when it was installed and that when it was dismantled the fuse plug was gone. The testimony of C. L. Harris, appellee's employee plumber who made the installation of the heater also shows that the heater was turned on about 1:30 the afternoon of the seventeenth, with the water turned in it and the heater lighted and functioning when they left at 5 P.M. On the morning of January 18 when appellee's employee opened the house they found it flooded with water and the heater burst.

Appellees pleaded that appellant was guilty of specific grounds of negligence in providing a temperature and relief valve that failed to control the temperature and pressure on the occasion in question, in failing to test the valve to discover its defective condition and in providing a defective valve, and that all such actions and omissions were the proximate causes of the damages. In the alternative he pleaded the doctrine of res ipsa loquitur.

In its requested findings of fact the trial court found that the valve was "defectively manufactured in that the inside of the valve casting was irregular and uneven. The irregular and uneven casting on the inside of the valve caused the valve mechanism to stick, or not open and allow pressure to escape. And just prior to the heater's bursting the patrol's temperature and relief valve, in question, did stick and as a direct and proximate result thereof the heater burst." In its findings the trial court also absolved appellee and its employees and agents of any negligence.

We have studied the record in this case very carefully and have been unable to find sufficient evidence of probative value from which the trial court could have found negligence against appellant. Neither the appellee nor his employees offered any evidence as to whether the valve did or did not function properly nor did they produce any evidence of probative value concerning the cause of the explosion. The only inference in the testimony we have been able to find of any matter by which the trial court could have concluded the valve was defective was the effort of appellee's council to secure a favorable response to his questions to the manager of the valve company, Albert F. Traver, who qualified as an expert. The statement of facts in this connection reveals the following:

"Q. It appears to me that this temperature release valve, the casting on the inside, has had part of it removed—can you see that? A. I am not sure I know what you mean, there?

"A. I am talking about the inside portion of this casting, that has the shoulders there, can you see that?

"Q. And you see on the right hand side of it? A. Yes, sir.

"Q. In the area of about where this little fuse plug would be, isn't it? A. Yes, sir.

"Q. What would be the effect if that casting there caught and held the spring and the top of the coupling that the fuse plug fits in,—then the only thing you would have would be for the fuse plug itself to disintegrate,

isn't that right? A. I don't believe it can be caught there.

"Q. Well, assuming it could? A. Assuming it could, if you held it good and tight, then all you would have left would be the fuse plug.

"Q. For whatever it is worth, I call the court's attention to the casting on the inside, that appears to have some shoulders or something there * * * That is all."

■ It is fundamental that appellee, having alleged specific acts of negligence, was under the burden of proving at least one of those acts by a preponderance of the evidence and that such was a proximate cause of the explosion. The questions above quoted were obviously for the purpose of showing a fault in the casting on the inside of the valve which prevented the spring that released the pressure from functioning so the pressure could be released. The expert testified, "I do not believe it can be caught there." A thorough and complete examination of the valve and all its parts brought forward to us as an exhibit, convinces this writer the witness correctly concluded that the spring could not be caught on the shoulders or rough edge of the inside casting of the valve. Further, the question and answer elicited are both based on an assumption that the spring in the valve stuck, a fact nowhere proved in the record. Additionally, the record shows that even if the spring was not functioning the fuse plug would have melted to release the pressure. The fact that it was properly in place when the valve was installed and was gone when it was disassembled after the explosion is certainly some proof that the valve properly functioned.

The record shows that the minimum temperature on January 17, 1956, was 6 degrees above zero and the maximum was 23. On the following day the minimum temperature was 3 above zero, indicating the minimum on the night of the explosion was somewhere between 3 and 6 above zero. The cold water line running from the main line outside the house into the hot water heater was not fitted with a check valve so that if pressure in the water heater exceeded the water pressure in the main line the water could flow outward. Another expert witness, L. W. Stitt advanced the theory that the tank built up excessive pressure and caused the valve to be actuated, then the fuse plug melted, permitting the water to be forced out through the copper tubing on the roof of the house and condensation in the outlet pipe froze, creating a block in the outlet pipe. He further theorized that the water in the line leading from the main into the house froze under the extreme cold weather. With the inlet line and the outlet line both frozen he stated in substance the result was a "bomb."

■ In 30B, T. J. on Negligence, in Section 139, at page 375 it is said:

"If the evidence leaves it equally probable as to whether the calamity was caused by the act of the defendant or by some other force or instrumentality, there can be no recovery."

We believe the record in this case points even more strongly to the theory of appellant as to the explosion than the theory of appellee, since there is no credible testimony that the valve failed to function, but only conjecture and speculation. Likewise, there is only speculation that the explosion was caused by a "bomb" created from both the inlet and outlet pipes freezing up. Even if the theories were of equal force appellee failed to discharge its burden if the explosion with equal reasonableness might have been accounted for on a theory that did not entail negligence on appellant's part. Universe Tank Ships v. Pyrate Tank Cleaners, D.C., 152 F.Supp. 903.

Our state courts follow the same line of reasoning as that just quoted. In Western Telephone Corporation of Texas v. McCann, 128 Tex. 582, 99 S.W.2d 895, 898,

our Commission of Appeals, in an opinion adopted by our Supreme Court, quoted with approval from another jurisdiction as follows: " *· * * it may be stated as an axiomatic rule that whenever court or jury are left by the evidence in a situation where, in order to find the ultimate fact alleged, they must piece out the facts adduced with conjecture or supposition, the plaintiff must be held to have failed in his proof." We believe the case cited and quoted from is decisive on the question of the failure of appellee to discharge the burden required in proving specific grounds of negligence.

In its pleadings and by brief appellee has asserted the doctrine of res ipsa loquitur, meaning, "the transaction speaks for itself." Under the very definition of the rule quoted in its brief as applicable to the doctrine the appellee has not brought itself within the rule. It quotes from Montgomery Ward & Co. v. Scharrenbeck, Tex. Civ.App., 199 S.W.2d 830, 939, as follows:

> "The rule or doctrine of res ipsa loquitur is thus defined by the Supreme Court of the United States in the case of San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98, 99, 32 S.Ct. 399, 401, 56 L.Ed. 680, 684: '* * * rightly declared and applied the doctrine of res ipsa loquitur which is, when a thing which causes injury, without fault of the injured person, *is shown to be under the exclusive control of the defendant,* and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care * * *'." (Emphasis added.)

Part of the definition requires that proof be made that the instrumentality which causes the injury is shown to be under the exclusive control of the defendant. Appellee contends this does not imply that the injurious agency be in the control of the defendant at the time of the injury but that it is sufficient if it appears that such agency was in its control at the time of the negligent act that caused the injury. It reasons that the inside casting of the valve was faulty, that appellant had the exclusive control of it when the fault was created and since it was properly handled after it left appellant's plant the mere fact of the explosion warrants the inference of negligence. In the first place we believe those cases which hold that the facts of the occurrence warrant the inference of negligence even though the instrumentality is not under the physical control of the defendant at the time are limited principally to merchandise such as food and drinks marketed in sealed containers designed for human consumption. Mr. Justice Norvell of our Supreme Court, while a member of the San Antonio Court of Civil Appeals, gives a very thorough discussion of the doctrine of res ipsa loquitur in connection with the distinctions in food and drink cases with other type cases in Benkendorfer v. Garrett, Tex.Civ.App., 143 S.W. 2d 1020, 1022. He sets out the general rule as follows:

> "Before the doctrine can be applied 'the evidence must show that the thing causing the accident was under the control of the defendant at the time of the accident.' "

He then goes ahead to say:

> "There are however fundamental factors which differentiate cases 'involving merchandise inflicting injury upon first or prior to being put to its intended use, especially food and drink intended for human consumption, marketed in sealed containers,' * * * from other cases in which the doctrine is sought to be applied. In such cases, it is not necessary that the instrumentality causing the injury be within the physical control of the person sought to be held liable under the doctrine."

Judge Norvell then discussed the well known Georgia and Missouri cases of Payne v. Rome Coca-Cola Bottling Co., 10 Ga.App. 762, 73 S.E. 1087, and Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001, which applied the res ipsa loquitur doctrine to cases wherein a sealed bottle of carbonated beverage explodes when supported by attending testimony establishing proper handling of the bottle subsequent to its leaving the control of the manufacturer of the beverage. The Benkendorfer case was itself a bottle beverage case and the San Antonio Court followed the Georgia and Missouri courts in applying that law to that case, after first distinguishing the sealed food and drink cases from other cases in which one is sought to be held liable under the doctrine.

Appellee cites the case of Gulf C. & S. F. Ry. Co. v. Dunman, Tex.Com.App., 27 S. W.2d 116, 118, 72 A.L.R. 90. That case is not one of those sealed bottle and food drink cases and Judge Sharp who wrote the opinion for the court quoted a definition which has been termed a legal classic, as follows:

> " 'When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' "

■■ Even if we should be in error in holding that the res ipsa loquitur doctrine is inapplicable in this case because the instrumentality alleged as causing the harm was at the time of the explosion in the exclusive possession of appellee and its employees the doctrine is still not applicable to the instant case. The law is well settled in this state that where the evidence shows the accident may have happened as the result of one of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant

than to another cause, the doctrine does not apply. Benkendorfer v. Garrett, Tex.Civ. App., 143 S.W.2d 1020; Davis v. Castile, Tex.Com.App., 257 S.W. 870 (approved by the Supreme Court). We certainly cannot say from the record of this case that it was more reasonably probable that the explosion was due to the negligence of the defendant, appellant herein, than to any other cause. In fact, we believe the contrary more probable.

■ It is also the law of this state that mere proof of an injury, in the absence of proof of the manner in which it was received and the circumstances attending the occurrence thereof, is insufficient to warrant an inference of negligence on the part of a defendant, and to invoke the res ipsa loquitur doctrine. Alley v. Texas Electric Service Co., Tex.Civ.App., 134 S.W.2d 762. In our case there certainly is insufficient evidence of probative value to establish proof of the manner in which the explosion took place and the circumstances attending the occurrence thereof.

■ Appellee urges as one of its counter points that appellant and this court are bound by the findings of the trial court establishing liability, and must accept as true the findings of the trial court because nowhere has appellant excepted to, or in any manner challenged or attacked any of the findings as to liability made and filed by the trial court. We are unable to agree with appellee's contention. The record shows that when appellee rested its case appellant moved for judgment, that at the conclusion of the testimony it filed exceptions and objections to the judgment before its entry, and though tried before the court it also filed its motion for new trial. Through these motions it raised the questions of no evidence to support the judgment, urged that the great weight and preponderance of the evidence was with appellant and objected to the court's proposed findings. Additionally, appellant gave notice of appeal and has brought to us a statement of facts as part of the rec-

ord. In a case tried before the court without a jury, as in our case, the findings of fact are not conclusive on appeal when a statement of facts appear in the record. Preston State Bank v. Finberg, Tex.Civ. App., 305 S.W.2d 654, at page 658, syl. 5; Swanson v. Swanson, 148 Tex. 600, 228 S.W.2d 156.

Believing there is no credible testimony of probative value to justify the judgment rendered, and the record giving no indication that the evidence would show any substantial difference on another trial, the judgment is reversed and rendered.